# United States Court of Appeals for the Federal Circuit

---

**RONALD CHANDLER, CHANDLER MFG., LLC, NEWCO ENTERPRISES LLC, SUPERTHERM FLUID HEATING SERVICES, LLC,**
*Plaintiffs-Appellants*

**v.**

**PHOENIX SERVICES LLC, MARK H. FISHER,**
*Defendants-Appellees*

---

2020-1848

---

Appeal from the United States District Court for the Northern District of Texas in No. 7:19-cv-00014-O, Judge Reed O'Connor.

---

THEODORE G. BAROODY, Carstens & Cahoon, LLP, Dallas, TX, argued for plaintiffs-appellants. Also represented by DAVID W. CARSTENS.

DEVAN V. PADMANABHAN, Padmanabhan & Dawson, PLLC, Minneapolis, MN, argued for defendants-appellees. Also represented by PAUL J. ROBBENNOLT.

---

Before CHEN, WALLACH*, and HUGHES, *Circuit Judges*.

---

\*   Circuit Judge Evan J. Wallach assumed senior status on May 31, 2021.

HUGHES, *Circuit Judge.*

# **O R D E R**

Appellants assert antitrust claims based on the prior enforcement of U.S. Patent No. 8,171,993 in a separate case and, after we held the patent unenforceable due to inequitable conduct, the alleged continued enforcement through Appellee's listing the patent on their website. We lack jurisdiction because this case does not arise under the patent laws of the United States. Accordingly, we transfer the case to the United States Court of Appeals for the Fifth Circuit, which has appellate jurisdiction over cases from the District Court for the Northern District of Texas.

## I

This appeal comes to us from a *Walker Process* monopolization action under § 2 of the Sherman Act.[1] To succeed on a *Walker Process* claim, a plaintiff must prove (1) that "the antitrust-defendant obtained the patent by knowing and willful fraud on the patent office and maintained and enforced that patent with knowledge of the fraudulent procurement," and (2) that the plaintiff can satisfy "all other elements necessary to establish a Sherman Act monopolization claim." *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). Here, Plaintiffs Ronald Chandler, Chandler Manufacturing, LLC, Newco Enterprises, LLC, and Supertherm Heating Services, LLC (Chandler) allege that the first prong of the *Walker Process* claim is met by Defendants Phoenix Services, LLC and Mark Fisher (Phoenix) asserting U.S. Patent No. 8,171,993.

---

[1]    In *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, the Supreme Court held that enforcement of a patent procured by fraud on the PTO can be the basis for an antitrust claim. 382 U.S. 172, 176–77 (1965).

Beginning in 2006, a business called Heat On-The-Fly began using a new fracking technology on certain jobs. Heat On-The-Fly's owner, Mark Hefley, later filed a patent application regarding the process, but failed to disclose 61 public uses of the process that occurred over a year before the application was filed. This application led to the '993 patent, and Heat On-The-Fly asserted the '993 patent against a number of parties. In 2014, Defendant Phoenix acquired Heat On-The-Fly and the '993 patent. Chandler alleges that enforcement of the '993 patent continued in various forms. Then, in an unrelated 2018 suit, we affirmed a holding that the knowing failure to disclose prior uses of the fracking process rendered the '993 patent unenforceable due to inequitable conduct. *See Energy Heating, LLC v. Heat On-The-Fly, LLC*, 889 F.3d 1291, 1296 (Fed. Cir. 2018).

Chandler alleges that Phoenix's assertion of the '993 patent against Chandler constitutes a *Walker Process* antitrust violation.

II

We have jurisdiction over the appeal of a final decision of a district court "in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). However, while *Walker Process* antitrust claims may *relate* to patents in the colloquial use of the term, our jurisdiction extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988); *see also Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 834 (2002) ("Not all cases involving a patent-law claim fall within the Federal Circuit's jurisdiction . . . Congress referred to a well-established body of law that

requires courts to consider whether a patent-law claim appears on the face of the plaintiff's well-pleaded complaint."), *superseded in part by statute*, Leahy-Smith America Invents Act sec. 19(b), Pub. L. No. 112-29, 125 Stat. 284, 331–32 (2011) (amending 28 U.S.C. § 1295(a)(1) to add compulsory patent counterclaims) (hereinafter AIA); *Xitronix Corp. v. KLA-Tencor Corp.*, 882 F.3d 1075, 1076 (Fed. Cir. 2018) (*Xitronix I*) (applying *Christianson*, 486 U.S. at 809, to our current jurisdictional statute). Here, because Chandler's cause of action arises under the Sherman Act rather than under patent law, and because the claims do not depend on resolution of a substantial question of patent law, we lack subject matter jurisdiction.

A

We recently analyzed a similar situation in *Xitronix I*. *See* 882 F.3d at 1075. There, the plaintiff asserted a standalone *Walker Process* monopolization claim based on enforcement of a live patent, alleging fraud on the PTO in procuring that patent. *Id.* We held that we lacked jurisdiction. *Id.* While acknowledging that issues regarding "alleged misrepresentations to the PTO will almost certainly require some application of patent law," we held that a *Walker Process* claim does not inherently present a substantial issue of patent law under Supreme Court precedent. *Id.* at 1078.

To aid our interpretation of the words "arising under" in 28 U.S.C. § 1295(a)(1), we drew from the Supreme Court's decision in *Gunn v. Minton*, where the Court interpreted those same words in 28 U.S.C. § 1338. *Id.* at 1077 (citing *Gunn v. Minton*, 568 U.S. 251, 259 (2013)); *see also Christianson*, 486 U.S. at 808–09 (demanding "linguistic consistency" in interpreting various jurisdictional statutes involving "arising under" language). In *Gunn*, the Supreme Court held that a patent attorney malpractice case did not "arise under" federal patent law for the purposes of § 1338, even though it necessarily involved the resolution of a

patent law question. 568 U.S. at 258–59. The Court reasoned that resolution of the patent "case within a case" would have no effect on "the real-world result of the prior federal patent litigation," *id.* at 261, and that allowing a state court to resolve the underlying patent issue would not undermine the uniform body of patent law because "federal courts are of course not bound by state court case-within-a-case patent rulings." *Id.* at 262. "[T]he possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' exclusive patent jurisdiction, even if the potential error finds its root in a misunderstanding of patent law." *Id.* at 263. Similarly, in *Xitronix I*, we found that the risk of another circuit making an erroneous or inconsistent patent law decision within a *Walker Process* claim is not enough to trigger our jurisdiction over federal patent law cases:

> The underlying patent issue in this case, while important to the parties and necessary for resolution of the claims, does not present a substantial issue of patent law. . . . Patent claims will not be invalidated or revived based on the result of this case. Because Federal Circuit law applies to substantive questions involving our exclusive jurisdiction, the fact that at least some *Walker Process* claims may be appealed to the regional circuits will not undermine our uniform body of patent law. . . . As in *Gunn*, even if the result of this case is preclusive in some circumstances, the result is limited to the parties and the patent involved in this matter.

*Xitronix I*, 882 F.3d at 1078 (citations omitted).

Our *Xitronix I* decision is precedential and adherence to that precedent mandates transfer of this case to the Fifth Circuit. As in *Xitronix I*, there are no patent issues outside of the *Walker Process* antitrust claim. Further, because a prior decision declared the '993 patent unenforceable, the appellate court hearing this case may have little or

no need to delve into patent law issues. Although we do not hold that our jurisdiction turns on whether a patent can still be asserted, we find it significant that Appellants fail to clearly raise any patent law questions not already addressed in *Energy Heating*. *See Energy Heating*, 889 F.3d at 1302. The enforceability of the patent is no longer at issue and Chandler's arguments center on the nature of Phoenix's relationship to the inventor's inequitable conduct rather than on the conduct before the patent office itself. *See, e.g.*, Appellant's Br. 44 (arguing that Phoenix should be treated as a "single enterprise" with Heat On-The-Fly). Therefore, the case to invoke our jurisdiction is even weaker here than in *Xitronix I*.

B

On transfer of *Xitronix I*, the Fifth Circuit held our conclusion to be implausible, and returned the case to us. *Xitronix Corp. v. KLA-Tencor Corp.*, 916 F.3d 429, 444 (5th Cir. 2019) (*Xitronix II*); *see also Christianson*, 486 U.S. 800, 819 (1988) ("[I]f the transferee court can find the transfer decision plausible, its jurisdictional inquiry is at an end."). Respectfully, we disagree with the Fifth Circuit's interpretation.

After noting that "*Christianson* linked § 1295 to § 1338 and § 1331," which makes *Gunn* relevant to our analysis of § 1295, the Fifth Circuit attempted to distinguish *Gunn* by emphasizing that "[w]hen *Christianson* was decided, § 1295 referred to § 1338 expressly, [but] [b]y the time of *Gunn* . . . the phrase 'any civil action arising under . . . any Act of Congress relating to patents' replaced the reference to § 1338.'" *Xitronix II*, 916 F.3d at 442–43.

We do not read this minor change to § 1295 as being so sweeping as to divorce § 1295's connection to § 1338 and § 1331. Section 19 of the AIA amended both § 1295(a)(1) and § 1338(a). It revised § 1295(a)(1) to parallel § 1338(a) while expanding Federal Circuit jurisdiction to cover compulsory counterclaims, a situation not at issue here. The

Supreme Court in *Christianson* linked § 1331 and § 1338 for the purpose of "linguistic consistency," 486 U.S. at 808, and the AIA made the relevant wordings of § 1295 and § 1338 essentially identical. *Compare* 28 U.S.C. § 1295(a)(1) (giving us jurisdiction over appeals of "any civil action arising under . . . any Act of Congress relating to patents"), *with* 28 U.S.C. § 1338(a) (giving federal courts jurisdiction over "any civil action arising under any Act of Congress relating to patents"). We think it is clear that Congress intended the link between the statutes to continue rather than end. Thus, we respectfully disagree with the Fifth Circuit's conclusion that the Supreme Court's interpretation of § 1331 and § 1338 in *Gunn* is irrelevant to our interpretation of § 1295.

The Fifth Circuit also intimated that our precedent dictates that we have jurisdiction over standalone *Walker Process* claims, but we respectfully disagree. *See Xitronix II*, 916 F.3d at 439 ("[T]he Federal Circuit read its precedent predating *Gunn* in a manner at odds with our reading of that caselaw."). The Fifth Circuit cited two Federal Circuit decisions for this proposition. First, in *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998), we held that it was appropriate to apply "Federal Circuit law," rather than regional law, to a *Walker Process* claim. *See Xitronix II*, 916 F.3d at 439. But this does not mean that we have jurisdiction over all *Walker Process* claims. While the scope of our jurisdiction and whether Federal Circuit law applies are related questions, they are distinct. *See FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995) ("Unless a procedural matter is importantly *related to* an area of this court's exclusive jurisdiction, . . . we will usually be guided by the views of the circuit in which the trial court sits. . . .") (emphasis added). As we recognized in *Nobelpharma*, *Walker Process* claims usually arise in the context of patent litigation and therefore "clearly *involve*[]" our jurisdiction, but that does not mean every *Walker Process* claim gives rise to Federal

Circuit jurisdiction. *See Nobelpharma*, 141 F.3d at 1067; *id.* at 1068 ("Because *most* cases involving [inequitable conduct] will therefore be appealed to this court, we conclude that we should decide these issues as a matter of Federal Circuit law, rather than rely on various regional precedents.") (emphasis added); *Xitronix I*, 882 F.3d at 1078.

Second, the Fifth Circuit quoted a footnote in *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 544 F.3d 1323, 1330 n.8 (Fed. Cir. 2008) (*Cipro*) to support its conclusion. *See Xitronix II*, 916 F.3d at 437 ("Accepting the transfer, the Federal Circuit observed that 'the determination of fraud before the PTO necessarily involves a substantial question of patent law.'") (quoting *Cipro*, 544 F.3d at 1330 n.8)). But as we noted in *Xitronix I*, we must consider this footnote in context. 882 F.3d at 1079. In *Cipro*, jurisdiction was not disputed, and because we received the case on transfer, we reviewed the issue under the plausibility standard of *Christianson* rather than conducting de novo analysis. *See id.* As such, we do not interpret our precedent to mandate exclusive Federal Circuit jurisdiction over all *Walker Process* cases. To the contrary, our precedential opinion in *Xitronix I* is directly on-point here and therefore governs our decision.

C

On return of *Xitronix* from the Fifth Circuit, we accepted jurisdiction as plausible. *Xitronix Corp. v. KLA-Tencor Corp.*, 757 F. App'x 1008, 1010 (Fed. Cir. 2019) (nonprecedential) (*Xitronix III*). In our nonprecedential opinion, we stated:

> Despite [its] flaws, the Transfer Order's conclusion that we have jurisdiction is not implausible. The Court's decision in *Gunn* could be read to imply that whether the patent question at issue is substantial depends on whether the patent is "live" such that the resolution of any question of patent law is not "merely hypothetical." *See Gunn*, 568

> U.S. at 261. . . . Here, the underlying patent has not expired, and the resolution of the fraud question could affect its enforceability.

*Id.*; *see also Xitronix II*, 916 F.3d at 439–41 (emphasizing that in *Xitronix,* the patent at issue was "currently valid and enforceable," so the "litigation [had] the potential to render that patent effectively unenforceable and to declare the PTO proceeding tainted by illegality. This alone distinguishes the present case from *Gunn*.").[2] We therefore followed the Fifth Circuit's conclusion and accepted jurisdiction.

Here however, even that reasoning would not lead us to find a "plausible" basis for jurisdiction, much less jurisdiction under our court's binding precedent in *Xitronix I.* The patent allegedly being enforced by Phoenix has already been ruled unenforceable. *Energy Heating*, 889 F.3d at 1296 ("We affirm the district court's declaratory judgment that U.S. Patent No. 8,171,993 is unenforceable due to inequitable conduct."). This case will not alter the validity of the '993 patent. Any discussion of the '993 patent would be "merely hypothetical," and would not "change the real-world result of the prior federal patent litigation." *See Gunn*, 568 U.S. at 261.

---

[2]    We reiterate, however, that although we found this reasoning plausible, we did not endorse it. *Compare Xitronix III*, 757 F. Appx. at 1010 ("[W]e reject the theory that our jurisdiction turns on whether a patent can still be asserted. Under this logic, cases involving *Walker Process* claims based on expired patents would go to the regional circuits while those with unexpired patents would come to us, despite raising the same legal questions."), *with* Appellant's Reply Br. 28 (citing *Xitronix III* in support of jurisdiction).

10                              CHANDLER v. PHOENIX SERVICES LLC

Simply put, this is not a patent case. Rather, this case purports to raise novel Fifth Circuit antitrust issues. *See Chandler v. Phoenix Servs.*, No. 7:19-CV-00014-O, 2020 WL 1848047, at \*12 (N.D. Tex. Apr. 13, 2020) ("Whether a parent may be liable for the attempted monopolization of its subsidiary is an issue of first impression in the Fifth Circuit."). We find it unpersuasive that we should exercise jurisdiction over such questions merely because a now-unenforceable patent was once involved in the dispute.

### III

Because this case presents even less reason for Federal Circuit jurisdiction than the *Xitronix* case, our decision in *Xitronix I* governs. We lack subject matter jurisdiction over this appeal.

Accordingly,

IT IS ORDERED THAT:

The case is transferred to the United States Court of Appeals for the Fifth Circuit.


                                        FOR THE COURT

June 10, 2021                           /s/ Peter R. Marksteiner
    Date                                Peter R. Marksteiner
                                        Clerk of Court